UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JESSE ANGEVINE,

           Plaintiff,

      -against-                  **COMPLAINT**     9:22-cv-247 (MAD/ML)

C.O. NATHAN HATFIELD,
SGT. CHRISTOPHER SEYMOUR,     Plaintiff Demands a
C.O. RICKY REYNOLDS,             Trial by Jury
C.O. JOSEPH COSTELLO and
C.O. BRADLEY VUILLEMOT,

           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiff, by his attorneys Sivin, Miller & Roche, LLP, complaining of defendants, alleges as follows, upon information and belief:

## THE PARTIES AND JURISDICTION

        1. That at all times herein mentioned, plaintiff was and is a citizen of the State of New York.

        2. That at all times herein mentioned, plaintiff was incarcerated at Cayuga Correctional Facility (Cayuga), in Moravia, NY, within the Northern District of New York, and was under the care, custody, and control of the New York Department of Corrections and Community Supervision (DOCCS).

        3. That at all times herein mentioned, defendants were and are citizens of the State of New York.

        4. That at all times herein mentioned, defendant C.O. Nathan Hatfield (Hatfield) was a correction officer employed at Cayuga by DOCCS.

5. That at all times herein mentioned, Hatfield was acting within the course and scope of his employment as a DOCCS correction officer.

6. That at all times herein mentioned, Hatfield was acting under color of state law.

7. That at all times herein mentioned, defendant Sgt. Christopher Seymour (Seymour) was a correction officer employed at Cayuga by DOCCS.

8. That at all times herein mentioned, Seymour was acting within the course and scope of his employment as a DOCCS correction officer.

9. That at all times herein mentioned, Seymour was acting under color of state law.

10. That at all times herein mentioned, defendant C.O. Ricky Reynolds (Reynolds) was a correction officer employed at Cayuga by DOCCS.

11. That at all times herein mentioned, Reynolds was acting within the course and scope of his employment as a DOCCS correction officer.

12. That at all times herein mentioned, Reynolds was acting under color of state law.

13. That at all times herein mentioned, defendant C.O. Joseph Costello (Costello) was a correction officer employed at Cayuga by DOCCS.

14. That at all times herein mentioned, Costello was acting within the course and scope of his employment as a DOCCS correction officer.

15. That at all times herein mentioned, Costello was acting under color of state law.

16. That at all times herein mentioned, defendant C.O. Bradley Vuillemot (Vuillemot) was a correction officer employed at Cayuga by DOCCS.

17. That at all times herein mentioned, Vuillemot was acting within the course and scope of his employment as a DOCCS correction officer.

18. That at all times herein mentioned, Vuillemot was acting under color of state law.

19. That this Court has jurisdiction over this action in that the action arises under 42 USC § 1983 and alleges violations of plaintiff's civil rights, including rights guaranteed under the Eighth and Fourteenth Amendments to the United States Constitution.

## VIOLATIONS OF PLAINTIFF'S CIVIL RIGHTS

20. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

15. On August 10, 2021, inside the Cayuga dining hall, plaintiff and C.O. Hatfield engaged in a verbal argument over the number of milk cartons to which plaintiff was entitled as part of his breakfast.

16. During the course of this argument, Hatfield hurled an expletive at plaintiff, and plaintiff responded in kind by hurling an expletive at Hatfield.

17. In response to plaintiff's actions, Hatfield then slapped plaintiff in the head, threw plaintiff up against a wall, ripped up plaintiff's commissary sheets, and ordered plaintiff immediately back to his housing unit, thus depriving plaintiff the opportunity to eat his meal.

18. Hatfield also threatened plaintiff that, in substance, plaintiff had "another one coming; just wait."

18. Sgt. Seymour was present during, and observed portions of, Hatfield's improper actions toward plaintiff, and had reasonable opportunities to intervene to prevent and/or stop those actions.

19. Despite having reasonable opportunities to intervene to prevent and/or stop Hatfield's actions, Seymour deliberately failed and refused to do so.

20. After plaintiff returned to his housing unit on August 10, 2021, he was summoned by C.O. Reynolds, who was the dorm officer for the housing unit at that time.

21. Reynolds informed plaintiff that Hatfield told Reynolds about the prior encounter between Hatfield and plaintiff, and Reynolds further told plaintiff that Hatfield threatened that plaintiff would incur further punishment for his insolence toward Hatfield.

22. By his words and actions, Reynolds signaled to plaintiff that he knew that Hatfield intended to use additional force against plaintiff in retaliation for plaintiff having hurled an expletive at Hatfield.

23. Reynolds had reasonable opportunities to prevent any further unjustified use of force by Hatfield against plaintiff, but deliberately failed and refused to do so.

24. The following day, August 11, 2021, plaintiff was en route to the dining hall when he was confronted again by Hatfield, who forcibly escorted plaintiff to the side of the building and forcibly placed him up against a wall.

25. Hatfield then reminded plaintiff of Hatfield's threat to plaintiff the day before, and informed plaintiff of the location where that threat would be carried out. Specifically, Hatfield told plaintiff that after reporting back to his dorm, plaintiff would be summoned by Hatfield to report to the prison's draft room for further punishment. Hatfield then ordered plaintiff to return to his dorm, again without allowing plaintiff to eat his meal.

26. After returning to his dorm on August 11, 2021, plaintiff was summoned by C.O. Costello, who was the dorm officer in charge of plaintiff's housing unit at that time.

27. Costello informed plaintiff that Hatfield ordered plaintiff to report to the draft area.

28. Plaintiff then told Costello about his previous encounters with Hatfield, and he told Costello that he did not want to report to the draft area because he knew that Hatfield intended to assault him inside the draft area.

29. Costello responded to plaintiff's stated concerns by ordering plaintiff to report to the draft area.

23. Costello had a reasonably opportunity to intervene to prevent any further unjustified use of force by Hatfield against plaintiff, but deliberately failed and refused to do so.

24. On orders of C.O.s Hatfield and Costello, plaintiff then reported to the draft area, where he encountered Hatfield and C.O. Vuillemot.

25. In the presence of Vuillemot, Hatfield told plaintiff that he could choose between one of two forms of additional punishment for his insolence on August

10; plaintiff either could 1) be subjected to a beatdown, which would also include being sprayed with a chemical agent, and then be sent to the prison's Special Housing Unit (SHU) on a charge of having assaulted an officer, or 2) sit still and endure a single unprotected strike to the head.  Plaintiff opted for the latter form of punishment.

26. Hatfield then immediately struck plaintiff on the left side of the head, causing plaintiff to fall to the ground, all of which resulted in severe injuries to plaintiff, including but not limited to a perforated eardrum.

27. Vuillemot was present in the draft room throughout the entire encounter between Hatfield and plaintiff, had reasonable opportunities to prevent and/or stop the unjustified actions by Hatfield, and deliberately failed and refused to intervene.

28. The aforesaid actions of defendants herein were sadistic and malicious, and served no legitimate penological interest.

29. The aforesaid actions by Hatfield were so egregious and outrageous as to shock the contemporary conscience.

29. As a result of the actions of defendants herein, plaintiff endured physical and emotional injuries, suffered a likely permanent loss and/or diminution of hearing in the left ear, endured and continues to endure pain and suffering and loss of enjoyment of life, incurred and will continue to incur healthcare expenses, and has been otherwise damaged.

### FIRST CAUSE OF ACTION AGAINST DEFENDANTS
### (42 USC § 1983: Eighth Amendment)

21. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

22. The aforementioned acts by defendants were in violation of the rights guaranteed to plaintiff under the Eighth Amendment to the US Constitution to be free from cruel and unusual punishment.

23. As a result thereof, plaintiff is entitled to recover damages from defendants pursuant to 42 USC § 1983.

### SECOND CAUSE OF ACTION AGAINST HATFIELD
### (42 USC § 1983: Fourteenth Amendment)

24. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

25. The aforementioned acts by Hatfield were in violation of the substantive due process rights guaranteed to plaintiff under the Fourteenth Amendment to the US Constitution.

26. As a result thereof, plaintiff is entitled to recover damages from Hatfield pursuant to 42 USC § 1983.

WHEREFORE, plaintiff seeks judgment against defendants, as follows: a) As against defendant Hatfield, compensatory damages in the amount of One Million ($1,000,000.00) Dollars and punitive damages in the amount of Two Million ($2,000,000.00) Dollars; b) As against defendants Seymour, Reynolds, and Costello, compensatory damages each in the amount of Two Hundred Fifty Thousand ($250,000.00) Dollars and punitive damages each in the amount of Five Hundred

Thousand ($500,000.00) Dollars, and c) As against defendant Vuillemot, compensatory damages in the amount of Five Hundred Thousand ($500,000.00) Dollars and punitive damages in the amount of One Million ($1,000,000.00) Dollars.

Plaintiff also seeks attorney's fees against defendants pursuant to 42 USC § 1988, and interest, costs, and disbursements of this action.

Dated:  New York, New York
        March 14, 2022

Yours, etc.
Sivin, Miller & Roche LLP

s/ Edward Sivin
Bar Roll Number: 514765
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
Telephone: (212) 349-0300
E-mail: esivin@sivinandmiller.com